**LOCAL 1255, INTERNATIONAL ASSO-CIATION OF MACHINISTS AND AEROSPACE WORKERS, AFL–CIO, Petitioner, Cross-Respondent,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent, Cross-Petitioner.**

**No. 71–1578.**

United States Court of Appeals, Fifth Circuit.

March 15, 1972.

---

Bernard Dunau, Plato E. Papps, Louis Poulton, Washington, D. C., for appellant.

Marcel Mallet-Prevost, Asst. Gen. Counsel, N. L. R. B., Washington, D. C., Elmer P. Davis, Regional Director, Region 16, N. L. R. B., Fort Worth, Tex., Glen M. Bendixsen, Washington, D. C., Eugene G. Goslee, Acting Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Stanley R. Zirkin, Atty., N. L. R. B., for appellee.

Before THORNBERRY, MORGAN and CLARK, Circuit Judges.

THORNBERRY, Circuit Judge:

This case is before the Court on the petition of Local 1255, International Association of Machinists and Aerospace Workers, AFL–CIO [the Union] to review and set aside an order of the National Labor Relations Board and on the cross-application of the Board to enforce the order.

On March 17, 1970 the Union struck Mason & Hanger-Silas Mason Company and established a picket line at the Company's Amarillo, Texas plant. Picketing continued from March 17 through April 3, 1970. Theron Howard, Jr., an employee of the Company, was a member of the Union when the work stoppage began. He crossed the picket line and worked throughout the strike. On March 18, the Union received a letter from Howard stating that he wished to be dropped from membership effective March 16, 1970.

On April 4, 1970 a member of the Union preferred intra-union charges against Howard for refusing to honor the picket line. Howard was found guilty as charged and the following penalty was voted by the Union:

> You shall be fined an amount equal to the wages earned by crossing the picket line at Pantex Plant or be expelled from any Local Lodge of the International Association of Machinists until the fine is paid and all other constitutional requirements are fulfilled.

Howard responded by filing an unfair labor practices charge against the Union based on § 8(b) (1) (A) of the National Labor Relations Act, 29 U.S.C.A. § 158(b) (1) (A).

> § 158(b) It shall be an unfair labor practice for a labor organization or its agents—
>
> (1) to restrain or coerce (A) employees in the exercise of the rights guaranteed in section 157 of this title: *Provided*, That this paragraph shall not impair the right of a labor organization to prescribe its own rules with respect to the acquisition or retention of membership therein;

§ 157 [§ 7 of the NLRA]:

> Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities . . . .

A hearing before a Trial Examiner was waived by both parties and the case went directly to the Board.

The Board found that Howard's resignation was effective when received by the Union on March 18. It held that the Union was free to punish him for crossing the picket line the two days before he quit the Union, March 17 and 18, but that it was barred by § 8(b) (1) (A) of the Act, *supra*, from disciplining him for postresignation strikebreaking.

■ This is a case of first impression in this Circuit. The facts are not in dispute. The legal issue before us, stated in its broadest terms, is whether a union may penalize a member, who resigns during a strike and returns to work, for conduct occurring after his resignation.[1] The Act does not provide a clear answer, but instead presents a somewhat conflicting matrix of legislation comprised of §§ 7 and 8(b) (1)

(A). § 7 grants employees the right to refrain from concerted union activities except in circumstances not relevant here. § 8(b) (1) (A) makes it an unfair labor practice for a labor organization to restrain or coerce employees in the exercise of their § 7 rights. It would thus seem at first glance that an employee-union member is free to eschew participation in strikes without fear of union discipline. This is, however, not the law. Union *members* may be disciplined by various means, including court-enforceable fines. NLRB v. Allis Chalmers Mfg. Co., 388 U.S. 175, 87 S.Ct. 2001, 18 L.Ed.2d 1123 (1967).

The Board argues, however, that although § 8(b) (1) (A) permits punishment of members, it absolutely prevents a union from imposing any form of penalty on an employee who has resigned from the union for conduct occurring after his resignation is effective. The

---

[1]. This issue has apparently arisen only twice before. In NLRB v. Granite State Joint Board, Textile Workers Union of America, Local 1029, AFL–CIO, 1st Cir. 1971, 446 F.2d 369, the court did not decide the issue of a union's right vel non generally to punish postresignation strikebreaking. It held rather that when a union member votes to strike he waives any right he may have under § 7 of the Act to resign from the union and return to work during that strike with immunity from union discipline. In *Granite State* not only had the union members voted to strike, they also had voted unanimously to fine any member who crossed the picket line during the strike. On November 26, 1971 the Board filed a petition for certiorari in *Granite State* (Supreme Court Docket No. 71–711).

More recently another court of appeals decided that a former union member may not be subjected to union discipline for postresignation conduct. Booster Lodge No. 405, Int'l Assoc. of Machinists and Aerospace Workers, AFL–CIO v. NLRB, 1972, D.C.Cir. (Nos. 24687, 24744, February 3, 1972) [hereinafter referred to as the *Boeing* case]. The court distinguished the *Granite State* case, *supra*, on the ground that the penalty there was levied pursuant to a specific vote prior to the strike, while in the case before it the fine was based on a general provision of

the union constitution. The *Boeing* court recognized, however, that its decision might conflict with *Granite State*. *Boeing, supra,* at note 19.

It is not clear to us whether these cases are in conflict. The *Boeing* court first seems to accept the Board's position that the Act absolutely forbids all union discipline for postresignation conduct of former members. The court then appears to retreat a little and base its decision not on the Act but on the union's constitution, which did not forbid voluntary resignation. The court refused to read in such a provision. The *Boeing* court specifically left open the question of whether a union may prevent resignation during a strike or discipline postresignation strikebreaking if it specifically sets out these powers in its constitution or by-laws. *Boeing, supra,* at note 20. This footnote suggests that the court did not fully embrace the Board position, since the Act surely may not be abrogated by union constitutional or by-law provisions.

We thus believe our resolution of the instant case is compatible with the *Boeing* and *Granite State* cases. To the extent that *Boeing* may be read to support the Board's position that all forms of discipline for postresignation picket-line-crossing are barred by the Act, we respectfully decline to follow it.

Union replies that it has an unqualified right to punish members who quit during a strike for crossing the picket line during the remainder of that strike. The Union argues alternatively that the proviso to § 8(b) (1) (A), which permits unions to prescribe their own rules "with respect to the acquisition or retention of membership" in the union, at least gives it the right in the instant case to punish Howard for his postresignation strikebreaking by giving him the choice of paying a fine or being expelled.[2] We find the Union's alternative contention persuasive. Since Howard had already resigned when the penalty was imposed, the thrust of the penalty was to condition readmission to membership on payment of the fine. The sanction for nonpayment of the fine was thus confined to the "acquisition or retention of membership," a domain which is reserved to the Union under the Act.

■ In the instant case, the Board adopted the position it took in the *Boeing* case, *supra* at note 1, that employees' postresignation acts are wholly beyond the pale of union discipline. The facts in the *Boeing* case were, however, distinguishable from those in the case before us. There the fines were not imposed in the alternative as they were here—that is, the employees were not given a choice of paying the fine or being expelled. In *Boeing* the union filed suit in some cases and threatened suit in others against its former members to collect their fines. In contrast, no suit has been filed in the instant case. Under the terms of the penalty imposed on Howard, see text *supra*, he may not be sued for crossing the picket line, but only may be expelled. We believe the Union's right to expel a member, or deny readmission to an ex-member, for not paying a fine is clearly protected by the proviso to § 8(b) (1) (A). The proviso makes no distinction between acts done while a member and those done while not a member. Either may be taken into consideration in determining who is to be admitted to membership or retained as a member. There is no doubt that the Union could have expelled Howard unconditionally for strikebreaking. It seems that if the Union may absolutely bar him from membership it may conditionally bar him subject to the payment of a fine.

■ In summary, we hold only that a union member who resigns during a strike and crosses his union's picket line to return to work may be fined by the union for his postresignation strikebreaking when the fine is enforceable only by expulsion from the union.[3] We express no opinion on the broader issue raised by the parties but not presented by this case of whether the Act permits a union to levy fines for postresignation conduct that are ostensibly enforceable in court or by any means other than expulsion from union membership.

Enforcement denied.

2.  The Board argues that the Union's alternate contention should not be considered by this Court, since it was not raised before the Board. 29 U.S.C.A. § 160(e). We disagree. The terms of the penalty assessed by the Union, which imposed a fine or expulsion in the alternative, were certainly before the Board during its deliberations. Although the record does not clearly indicate the points raised by both sides during their presentation to the Board, it can fairly be implied that the Board considered the terms of the penalty that was at the heart of the case. The Board had ample opportunity to consider the Union's alternate position.

3.  It should be noted that since we interpret Howard's penalty as presenting him with the choice of paying the fine or being expelled, the Union may not sue to enforce the portion of the fine attributable to the two days he crossed the picket line before he resigned as it could have under the Board's decision.